1164 Solano Ave., #134

Albany, California 94706

510 859-4807

ljroseonline@gmail.com

LISA ROSE, IN PRO PER

**FILED**

MAY -3 2024

CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

⑤
NP
IFP

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Division *[check one unless 1st complaint]*: ☐ San Francisco ☐ Oakland ☐ San Jose ☐ Eureka

| | |
|---|---|
| LISA ROSE<br><br>        Plaintiff,<br><br>vs.<br><br>SAN MATEO COUNTY COMMUNITY COLLEGE DISTRICT,<br><br>        Defendant. | No.  Case Number<br><br>**C24-02670** KAW<br><br>**COMPLAINT OF EMPLOYMENT DISCRIMINATION**<br><br>DEMAND FOR JURY TRIAL [check one]<br>Yes    No. |

I.   **INTRODUCTION**

II.  **TIMELINESS AND TOLLING OF STATUTES OF LIMITS** (see RTS notice attached)

III. **THE PARTIES**

IV.  **JURISDICTION AND VENUE**

V.   **STATEMENT OF FACTS**

VI.  **CLAIMS**

VII. **LIST OF FIGURES**

VIII. **REQUEST FOR RELIEF**

COMPLAINT

## I. INTRODUCTION

Plaintiff is a 70 year old female adjunct professor formerly employed by the San Mateo County Community College District (SMCCCD) to teach User Experience Design and Engineering. In mid-2021, a tenure track professor position qualifications of which plaintiff met and exceeded was listed. Plaintiff applied for it and was notified in December 2021 it would be closed and shortly "re-listed" and to "re-apply". No reason was given. It was listed again several weeks later in or around January or February 2022. Plaintiff applied again and notified shortly afterwards that she was eliminated for consideration.

During plaintiff's employment by SMCCCD, she was [1]sidelined by a male co-worker 3 (three) times who was selected to evaluate her teaching and later on her application for this position.

Plaintiff alleges that a hiring committee member's attitude expressed towards women (dismissive) and men (effusive) goes to discrimination based on sex as a motivating factor in the evaluation of her application leading to the adverse employment action of her rejection as a finalist. His rejection enabled pretext for the ADEA-related adverse employment action of hiring the substantially youngest, cheapest, and least qualified applicant than not only the plaintiff but all of the finalists.

Plaintiff informed the district of her experience and filed a complaint of sex and age discrimination with the EEOC and was urged by the principal investigator of its 1.5 years long investigation to file suit. Plaintiff applied to and interviewed for more than 10 teaching positions in California Community Colleges since filing complaint and was rejected from all but a public community college located outside California.

Having as a result experienced an offensive work environment, obstruction of the employment process, the adverse employment decision of failing to hire her, and a pattern of rejection suggesting retaliation, she is asking for relief .

---

[1] per Jessica Fink, Esq., Professor of Law, Harvard Law School "…gender bias …portraying female workers in a demeaning or condescending manner, belittling or diminishing their contributions…" (J. Fink, *Gender Sidelining and the Problem of Unactionable Discrimination*, Stanford Law & Policy Review, Vol. 29-57, SLPR, Ppg. 57-106, March 1, 2018)

COMPLAINT

## II. TIMELINESS AND TOLLING OF STATUTES OF LIMITS

This Complaint is being filed in a timely manner. EEOC RTS was issued on February 5th, 2024.

## III. THE PARTIES

A. PLAINTIFF

Lisa Rose

B. DEFENDANT

San Mateo County Community College District

3401 CSM Drive

San Mateo, CA 94402

(650) 574-6550

## IV. JURISDICTION AND VENUE

My case belongs in federal court under federal question jurisdiction because it is based on [check box for each law that applies]:

• [X] Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e-17 [for claims of discrimination based on race, color, national origin, religion or sex]

• [X] Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621 to 634

• Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12112 to 12117 or

• Rehabilitation Act, 29 U.S.C. §§ 791 et seq.

Venue is appropriate in this Court because [check one or more that applies]:

[ X ] a substantial part of the events I am suing about happened in this district.

Because the events happened in the County of San Mateo, this case should be assigned to the San Francisco/Oakland Division of this Court.

COMPLAINT

EEOC Form 161-B (01/2022)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

### NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

To: **Lisa Rose**
**1164 Solano Av 134**
**ALBANY, CA 94706**

From: **San Francisco District Office**
**450 Golden Gate Avenue 5 West, PO Box 36025**
**San Francisco, CA 94102**

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 550-2022-01713 | **CARLOS ROCHA,**<br>Senior Investigator | (650) 684-0915 |

*(See also the additional information enclosed with this form.)*

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

> More than 180 days have passed since the filing of this charge.

> The EEOC is terminating its processing of this charge.

*Age Discrimination in Employment Act (ADEA): You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, the EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court WITHIN 90 DAYS** \*of your receipt of this Notice.\* Otherwise, your right to sue based on the above-numbered charge will be lost.*

*Equal Pay Act (EPA): You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.***

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

February 5, 2024 - *Scott Doughtie*

Enclosures(s)

**FOR: Nancy Sienko**
**District Director**

cc: **Mellissa E Gallegos**
**Atkinson, Andelson, Loya, Ruud & Romo**
**12800 CENTER COURT DR S STE 300**
**Cerritos, CA 90703**
**David Feune**
**San Mateo Community College District**
**3401 CSM DR**
**San Mateo, CA 94402**

Enclosure with EEOC
Form 161-B (01/2022)

## INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court under Federal law.*
*If you also plan to sue claiming violations of State law, please be aware that time limits and other*
*provisions of State law may be shorter or more limited than those described below.)*

PRIVATE SUIT RIGHTS   --   **Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA), the Genetic Information Nondiscrimination Act (GINA), or the Age Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within 90 days** of the date you *receive* this Notice. Therefore, you should **keep a record of this date.** Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and its envelope, and tell him or her the date you received it. Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed **within 90 days of the date this Notice was** *mailed* **to you** (as indicated where the Notice is signed) or the date of the postmark, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. (Usually, the appropriate State court is the general civil trial court.) Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. Filing this Notice is not enough. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Your suit may include any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge. Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the respondent has its main office. If you have simple questions, you usually can get answers from the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy decisions for you.

PRIVATE SUIT RIGHTS   --   **Equal Pay Act (EPA):**

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back pay due for violations that occurred **more than 2 years (3 years)** before you file suit may not be collectible. For example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit before 7/1/10 – *not* 12/1/10 -- in order to recover unpaid wages due for July 2008. This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days of this Notice and within the 2- or 3-year EPA back pay recovery period.

ATTORNEY REPRESENTATION   --   **Title VII, the ADA or GINA:**

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction in your case may, in limited circumstances, assist you in obtaining a lawyer. Requests for such assistance must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney). Requests should be made well before the end of the 90-day period mentioned above, because such requests do not relieve you of the requirement to bring suit within 90 days.

ATTORNEY REFERRAL AND EEOC ASSISTANCE   --   **All Statutes:**

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any questions about your legal rights, including advice on which U.S. District Court can hear your case. If you need to inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide your charge number (as shown on your Notice). While EEOC destroys charge files after a certain time, all charge files are kept for at least 6 months after our last action on the case. Therefore, if you file suit and want to review the charge file, **please make your review request within 6 months** of this Notice. (Before filing suit, any request should be made within the next 90 days.)

*IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.*

## V. STATEMENT OF FACTS

A. Plaintiff was employed 2021 by SMCCD as an adjunct professor of User Experience/ User Interaction Design during which she experienced disparate treatment and hostility based on sex and age by co-worker Mr. Naas

B. Mid-2021, a job was posted for Tenure Track Professor of Animation and Digital Art to which plaintiff applied middle to late 2021. Plaintiff was notified listing would be closed and re-opened and to reapply. Plaintiff applied to second listing in January or February 2022. About 2 weeks later, she was notified she was not selected. No reason was given.

C. Mr. Naas served on the hiring committee for this tenure track teaching position and evaluated the plaintiff during 2021.

D. Defendant selected and hired a substantially younger applicant over plaintiff and all finalists for this tenure track position despite plaintiff's and all finalists' superior education and experience

E. Plaintiff's education and experience was superior to all finalists' for this tenure track teaching position

F. Plaintiff informed defendant that she had experienced adverse employment events based on age and sex, was considering filing a complaint with the EEOC, and was available to answer questions in writing. Plaintiff received no questions. Plaintiff filed complaint with EEOC on 6/16/2022.

COMPLAINT

Page 4 of 19

G. EEOC issued a Notice-of-Right-to-Sue letter which was received by plaintiff on or about 2/5/2024. DFEH issued a Notice-of-Right-to-Sue letter earlier and is valid as described in II. I have attached both Notices to this Complaint

H. After filing complaint with the EEOC, plaintiff applied and interviewed for at least 5 (five) teaching positions in the California Community Colleges and was rejected from all. Plaintiff secured part-time non-tenure track teaching position with State University of New York's Genesee Community College.

COMPLAINT

## VI. CLAIMS

### First Claim

### Law or Right Violated: Age Discrimination in Employment Act;

### 29 U.S.C. § 621 to 29 U.S.C. § 634)

Plaintiff claims disparate treatment based on age.

Plaintiff alleges (i) she is a member of a protected class;

(ii) she was qualified for her position; (iii) she experienced an adverse employment action; and (iv) similarly situated individuals outside of her protected class were treated more favorably, or that other circumstances existed surrounding the adverse employment action that give rise to an inference of discrimination.

1. **Plaintiff is in the protected class.** Defendant knew it. Plaintiff was 68 years old at time of application and was employed by the defendant. .

2. **Individual hired by defendant was 20+ years younger.** Individual hired was 41 at the time therefore meeting the law's test (+10 years) for "*significant difference*" . This satisfies (i)

3. **All finalists were significantly older than individual hired** (discernible mathematically by graduation dates documented in transcripts as well as employment history) indicating a *pattern of disparate treatment of significantly older candidates*. This goes to (iv) in that all significantly older finalists in the protected class were treated *less* favorably.

4. ***All* finalists were more qualified than the individual hired**

   (a.) All of the finalists had at least a Masters of Fine Art or Masters of Art *as **required** by the state*

COMPLAINT

Page 6 of 19



**FIGURE A - APPLICANTS COMPARED**

to teach these subjects per the [1]*Academic Senate for California Community Colleges.* Per her transcripts, the individual hired had neither.

(b.) At least 1 (one) finalist had a [2]terminal degree. Individual hired had [3]no terminal degree.

(c.) Individual hired did not have a Masters in a "[4]*related discipline*". Nor did they have a Masters of Art or Fine Art.

(d.) *All* finalists had experience teaching fully *accredited* college level courses in these subjects.

---

[1] Minimum Qualifications for Faculty and Administrators in California Community Colleges published by the California Community College's Chancellor's office. Noting also: "…In those cases *where a master's degree is not generally expected or available,* the minimum standard has been a bachelor's degree in any subject, plus two years of professional experience directly related to the teaching assignment or an associate degree in any subject, plus six years of professional experience directly related to the teaching assignment."

In the case of "Art", Masters' degrees are readily available thus anything less than a Masters would not meet the state's minimum qualifications. The terminal degree for Animation is an M.F.A. in Film and **"Digital Art" is not recognized as a separate discipline** in the ASCCC's Minimum Qualifications to teach as well as by the federal dept. of education and the state's board of education.

[2] Highest academic degree achievable in a discipline

[3] Discovered in EEOC's investigation on applicant's transcripts

[4] "Science" is not listed by the ASCCC as a "discipline related to" Art

---

COMPLAINT

All finalists had more teaching experience in general than individual hired. Individual hired had only taught a community college accredited course for 3 (three) terms. In contrast, all finalists had taught accredited college courses for longer.

(e.) The individual hired claimed to have taught a total of 3 (three) *accredited* community college courses claiming they were 'college level'. This is false. California community college accredited courses are only accepted as credit worthy by *some* colleges and universities and such institutions are almost exclusively in California. (See footnote #8)

In fact, the [5] bases its [6]minimum qualifications for teaching on those of California's public universities and colleges the latter of which require a terminal degree or licensure or significant professional eminence none of which the individual hired had. The individual hired was not qualified to teach any art course offering credit acceptable by public universities or colleges since they did not possess either a Masters of Art or Masters of Fine Art. All finalists including plaintiff had these critical degrees thus all were qualified *except* the individual hired. All of the above meets (iv) in that similarly situated individuals of a protected class [in this case, "significantly *older*" than the individual hired] were disfavored.

5. **Plaintiff was fully qualified for the position**. This was not disputed by the defendant therefore satisfies (ii).

6. **Plaintiff was more qualified than individual hired and defendant knew it** as evidenced in the rate of pay she was receiving while employed by the defendant as an adjunct professor per the defendant's established pay rate. District's pay rate is related to years of related work experience overall and academic degree. In contrast to the individual hired, plaintiff, a former designer and engineer for Apple, Sun, and others, had a [7]terminal degree and it was the correct degree per the ASCCC for these disciplines - an MFA in 'Film/Video-Animation and Film Graphics'.

Where **breadth** of actual accredited teaching in these subjects is concerned, plaintiff's experience was significantly greater compared to not only the hired person's but to **all** the finalists.

---

[5] **Academic Senate of the California Community Colleges (ASCCC)**

[6] https://rb.gy/mm0uka ASCCC's Minimum Qualifications to Teach

[7] "Terminal Degree" is the highest academic degree possible in the subject

COMPLAINT



**FIGURE B - APPLICANTS COMPARED RE BREADTH OF TEACHING**

Plaintiff's possession of a Clear [8]California Career Technology Education licensure to teach in 3 (three) designated subjects: (1) Art, (2) Entertainment Arts, and (3) Information Technology is further evidence of this. None of the other applicants had this directly relevant state licensure.

### Authorization

The Preliminary Designated Subjects CTE Teaching Credential authorizes the holder to teach in the subject or subjects named on the credential in grades twelve and below and in classes organized primarily for adults, in career technical, trade or vocational courses. The Clear Designated Subjects CTE Teaching Credential authorizes the holder to teach in the subject or subjects named on the credential in grades twelve and below and in classes organized primarily for adults, including services to English learners in Specially Designed Academic Instruction Delivered in English (SDAIE) in career technical, trade or vocational courses.

Available subjects, also known as industry sectors, are as follows:
- Agriculture and Natural Resources
- Arts, Media, and Entertainment
- Building and Construction Trades

**FIGURE C - CTE CREDENTIALING**

The State of California's Career Tech Ed "Art" *and* "Entertainment Arts" licensure is inclusive of "Digital Art" and covers Illustration, Web Design, Animation, etc. as these are all forms of art requiring demonstrated skill and past employment utilizing digital as well as analog tools. CTE licensure requires fulfillment of at least 5 (five) recent years of employment in related industries, completion of a formal state approved 3 (three) year program in education pedagogy, and an additional 2 (two) years of successful

---

[8] ref SB 1104: The state of California's Designated Subjects Career Technology Education (CTE) Teaching Credential authorizes the holder to teach in the designated subjects named on the credential in grades twelve and below and in classes organized primarily for **adults**, including services to English learners in Specially Designed Academic Instruction Delivered in English (SDAIE) **in career technical, trade or vocational courses**

COMPLAINT

teaching in accredited public CTE related education programs. In contrast, the hired individual had no state licensure at all. Hired individual claimed to have had their own business as a professional photographer however no evidence of business licensure was found. This goes to "intent" particularly notable here since some of the courses to be taught in this position were in the defendant's accredited "CTE" program.

7. **Plaintiff was more qualified than *all* the finalists**

(a.) *None* of the finalists held the state's Career Technology Education licensure. 1 (one) finalist had the state of California's "Single Subject" licensure in "Art" but this licensure does not permit the holder to teach *adults* in public education and the position was to teach accredited courses to adults - many courses of which, as stated before, are in the defendant's CTE program thus indicating the plaintiff was more qualified here.

(b.) None but the plaintiff had taught accredited courses in these subjects in *public* universities or colleges. In fact, plaintiff was employed by UC to teach Digital Illustration and Drawing *while employed by the defendant and the defendant knew it* since plaintiff had discussed such with Mr. Naas twice and included it in her employment history.

(c.) *None* but the plaintiff had documented actual employment as an engineer and designer specifically in the field of digital technology and specifically Animation with the plaintiff actually having pioneered the use of animation in product design for Apple in the 80s. In fact, plaintiff was recruited and employed by Apple again in the 90s specifically as an Engineer and Designer focused on digital graphics after doing same for Sun Microsystems for 5 years. Plaintiff holds one of Adobe's earliest certifications in digital printing technology.

(d.) *None* of the finalists let alone the individual hired had a verified work history in technology and digital art that went back to 1975 (beginning with creating and teaching Multimedia for the Los Angeles Bowers Museum). And most importantly, the defendant knew it - they were literally paying for it dollar for dollar in plaintiff's rate of pay. This goes to (iv) in that it shows "… similarly situated individuals outside of her protected class [i.e., "significantly younger"] were treated more favorably…"

(e.) During the EEOC's investigation, defendant alleged plaintiff's portfolio was not "digital art" however plaintiff's work samples were nearly identical in methods of production to those of *all*

COMPLAINT

the finalists including the individual hired. In contrast to the hired individual's portfolio, plaintiff's contained samples of work done for clients including Apple, Levi Strauss, American Academy of Ophthalmology, Versace, and others. Quality differed considerably but was consistent with the difference in level of education: per academic degree, plaintiff's work displayed mastery and hired individual's did not.

Example: Plaintiff's samples were signed demonstrating at least a basic applied understanding of copyright protection of creative visual assets; samples by the individual hired did not. Web design work also differed: plaintiff's site passed accessibility testing; hired individual's did not. Defendant claimed plaintiff's samples were "Studio" vs "Digital" "Art" but was unable to cite any source for its claimed definition of such. There definitions changed throughout the investigation and those they did provide failed to align with the state or federal dept. of education's or the ASCCC's actual categories of art (see footnote #10).

As well, at least one of the selected finalists' major and academic degree specialty was "Studio Art" according to their transcripts. Defendant also was unable to produce any evidence supporting plaintiff's samples were *not* "Digital Art" and rightfully so since all of them *were* created digitally - there was no way other than digitally most of them could have been done (which actually is the definition of a 'digital work of art'). Even given all of this, one of the finalists' portfolios did actually contain over 10 artworks created *non*-digitally suggesting all these explanations and reasons were pretext.

As a result, the EEOC determined defendant's claims regarding plaintiff's portfolio as "inconclusive". This goes to (iv.) and intention.

---

COMPLAINT

8. **Individual hired was not qualified to teach** *these* **subjects in [9]accredited courses in California Community Colleges at all**. (a.)Individual hired did [10]not meet the state of California's required academic degree requirement for teaching these subjects in *any* public college let alone the California Community Colleges *and they did not apply under equivalency*.

design OR an Associate's Degree plus six years of professional experience in graphic design OR the equivalent?

    ☑ Yes, I have a Bachelor's Degree plus two years of professional experience in graphic design

    ☐ Yes, I have an Associate's Degree plus six years of professional experience in graphic design

    ☐ I am applying for equivalence and my Equivalency Application is attached

    ☐ No

**FIGURE D - HIRED INDIVIDUAL'S APPLICATION**

(b.) In addition, the hired individual's application itself claimed 19 (nineteen) faculty positions of which *only 2 (two)* turned out to actually have involved any delivery of instruction (example: a position of "Waitress" was entered as a "Faculty" appointment). (c.) Multiple employers were listed in their application that turned out to be different departments in the defendant's organization and almost all entries were actually student employment. The amount of misleading data claimed and considered viable indicates a difference in how this applicant was treated from all the significantly older finalists as well as the plaintiff. This goes to (iv) in that it shows "… similarly situated individuals outside of plaintiff's protected class [i.e., significantly younger] were treated more favorably…" and knowingly therefore goes to intent.

9. **Defendant evaluated younger applicant differently than plaintiff and finalists**. (a.) Transcript of hired individual clearly showed they possessed *no* Masters of Art or Fine Art (see footnote #11), (b.) took a total of only 2 (two) courses in Animation and (c.) *completed only one of these 2*

---

[9] https://smccd.edu/international/transfer/index.php A credit transfer program between 140 4-year accredited colleges and SMCCCD (varies with college and program/major). Example: Quality of credits from a California community college in "Digital Media" are sometimes not accepted by USC. This is another reason why the state's academic senate prefers Masters degrees at a minimum. ""2/3 of students experienced some credit loss during transfer" according to the U.S. Dept. of Education.

[10] Per the Minimum Qualifications https://t.ly/ulPpp for Faculty and Administrators in the California Community Colleges "..In those **cases where a master's degree is not generally expected or available**, the minimum standard has been a bachelor's degree in any subject, plus two years of professional experience directly related to the teaching assignment or an associate degree in any subject, plus six years of professional experience directly related to the teaching assignment.". All finalists as well as plaintiff's transcripts are further evidence that in this case, **a master's degree IS indeed available and expected**. The U.S. dept. of education as well as the California Community Colleges (ASCCC) do not recognize"Digital Art" as a separate top level category in and of itself (see Footnote #10).

---

COMPLAINT

*(two) courses* at that. In contrast, plaintiff's transcripts document award of the correct terminal degree and over 40 units worth of courses in Animation.

Given the position was a "Professor of *ANIMATION* and Digital Art",  the plaintiff - especially given her work experience for Apple, etc. - was significantly more qualified than the individual hired with no terminal degree in any type of art at all.

The individual hired was not hired based on education or experience or portfolio. And as has been shown, they weren't hired on breadth of courses taught, number of courses taught, or even length of employment for the defendant since one of the finalists had been an instructor there for longer than the hired individual.

Given the reposting of the listing (see #10), date the hired individual applied, and how they learned about the opening, all of this together goes to (iv) in that it shows "…similarly situated individuals outside of her protected class [i.e., significantly younger] were treated more favorably…" and knowingly so therefore goes to intent.

10. **Defendant changed job posting for a reason.**

(a.) Defendant posted the job twice. Plaintiff applied for both listings. Defendant called plaintiff in December and told plaintiff the listing would be closed and did not state why. Plaintiff was told the identical listing would be reposted and that she could reapply at that time. The second listing was posted about 2 (two) weeks after the district called her and it was to this listing that both plaintiff and the person hired applied suggesting the application was "spoiled".

**In violation of the state's Minimum Qualifications for Faculty and Administrators in the California Community Colleges per the ASCCC for any type of art instruction, The 2nd listing *did not require an MFA or MA*.**

Given the individual hired states on their application that ***they learned of the opening from a colleague*** with the hired individual being a recent student of most of those hiring committee members, this as well as the application date and alteration of the posting suggests intent to favor and favor the youngest least experienced and educated applicant.

(b.) The second posting of the job showed no preferences.

The minimum qualifications it did show were those only permitted by the state "…[in] **cases where a master's degree is not generally expected or available…**" (*see footnote #9*). As has

COMPLAINT

already been discussed, this was not such a "case". Masters degrees were readily available that are inclusive of [11]"Digital Art" as is further evidenced in the transcripts of the very applicants selected as finalists. *The one applicant that did not have that minimum academic qualification was the youngest and least experienced and that was who got hired.* All of these go to intent to favor the (iv.) "significantly younger" applicant and that unlawful discrimination was a motivating factor for these alterations.

**FIGURE F - SECOND JOB LISTING**

**11. Defendant excludes 'age' in its commitment to fairness in the selection process**

The omission of 'age' as a characteristic the defendant is committing not to disfavor in its hiring and recruitment statement is found throughout this document.

**FIGURE G - SCREENING AND SELECTION**

[11] Per the US gov "Classification of Instructional Programs" (See https://shorturl.at/aM379 ) " [Digital Art]...a general *undifferentiated* program..."

COMPLAINT

Page 14 of 19

## Second Claim

**Law or Right Violated: Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e prohibits employment discrimination based on race, color, religion, sex and national origin**

Prior to applying for the job, plaintiff had experienced 3 (three) hostile encounters with 1 (one) of the two male hiring committee members, Paul Naas, whose rating of the plaintiff's portfolio as the lowest of *all applicants* was instrumental in the adverse employment action of her rejection as a finalist:

**Encounter 1:** Naas singled plaintiff out in a meeting April of 2021 where he [12]sidelined her qualifications. Having learned of her background in animation, film, and tv, he scoffed at her and insisted she cite names of prior employers expressing doubt she had the experience she claimed. "...Uh huh...", he said. "...Like what studios did you [actually] work for...". His tone was demeaning. In fact, his hostility was apparent enough that close to 20 seconds of uncharacteristic silence fell over the meeting. People seemed taken aback. None of the (certainly all substantially younger) faculty were interrogated, ridiculed, and questioned at all.

Plaintiff would come to experience his antipathy 2 more times in private virtual meetings with him. This goes to (iv.)

**Encounter 2:** In a discussion by phone with Naas about teaching, plaintiff had expressed her interest in teaching Animation and Digital Art in the dept. Naas was quick

---

[12] Jessica Fink, Esq., Professor of Law, California Western School of Law. J.D., Harvard Law School, 2001; B.A., University of Michigan, 1997 "...portrays female workers in a demeaning or condescending manner, belittling or diminishing their contributions. None of these slights, **in isolation**, likely would give rise to a viable antidiscrimination claim. Yet collectively, these incidents—which constitute what this article refers to as "gender sidelining"— **accumulate to create very real obstacles** ...to advancement for women at work. (J. Fink, *Gender Sidelining and the Problem of Unactionable Discrimination*, Stanford Law & Policy Review, Vol. 29-57, SLPR, Ppg. 57-106, March 1, 2018)

COMPLAINT

to dismiss, discard, and criticize any ideas she offered related to her prior teaching and education in the field or her current teaching of such for UC. He repeatedly referred to his male colleagues with a deference and collective respect. His statements regarding faculty and colleagues were noticeably absent any mention whatsoever of female faculty. In that same conversation, he mentioned a dept. at the college faculty members of which were almost all women. He told of his efforts to change how they were teaching something. Plaintiff made note of how he described his efforts: "... I went over there and told them to do ...", he said... Plaintiff was surprised and put off by his demanding tone.

Encounter 3: Plaintiff's simultaneous teaching appointments at that time did come up again. Naas expressed the same tone of condescension as documented in Encounter 1. Plaintiff would mention a classroom activity and Naas would respond with "...well, when x teaches that, he does it thusly..."). He seemed determined to sideline plaintiff and even courses plaintiff was taking creating an increasingly hostile work environment. Plaintiff felt he was trying to discourage her from pursuing employment at all in Animation and any related subjects at the district. She was fine as long as she 'stayed in her lane'.

In one conversation, he made remarks about part-time instruction ('...it's been so long since I had to... [stoop so low...]' that seemed condescending. Plaintiff, whose position was part-time, was the only woman in this dept. who at that time was equal in level of education and industry experience to Mr. Naas. In fact, there is evidence her qualifications may have exceeded his such as plaintiff's design and engineering background for Apple, etc.

Notable also in the EEOC investigation was the lack of evidence of any actual rubric to evaluate portfolios let alone criteria for the evaluation.

An example of a "rubric" in animation and art (whether digital or analog):

COMPLAINT

*"Competency in rendering hands and feet: [0] not evident [1] unsatisfactory [2] satisfactory [3] advanced competency. A rubric in art education is no different than any other: criteria and a means to measure such criteria.*

Naas's exceptionally low rating of plaintiff's portfolio (the lowest of all applicants) alongside the opposite rating from the other male hiring committee member in light of her interactions with Naas suggest the rating of her portfolio may be more indicative of his hostility and intent to obstruct "....deprive [her] of employment..." vs. quality of work. There is also no evidence that had a rubric been used, the same one was being used by each committee member given the extreme range of the rating of her portfolio.

In addition, there seemed a pattern and practice of hiring primarily male instructors in the

| If yes, please provide name, department and position held | |
|---|---|
| How did you hear about this employment opportunity? | District Employee, District Employment Site |

**FIGURE E - HIRED INDIVIDUAL'S APPLICATION**

specialty of Animation overall at least in the recent past again going to intent. It should be noted that when the EEOC went to the district to interview all the hiring committee members as well as the president, the only individual who did not make himself available for questioning was, in fact, Mr. Naas also going to intent. While none of these incidents alone might be actionable, all of them combined made for "...a hostile work environment based on or because of sex leading to the adverse employment decision to both obstruct and fail to hire..." and serve as pretext for favoring and hiring the substantially younger applicant.

COMPLAINT

Page 17 of 19

## VII. LIST OF FIGURES

**FIGURE A - APPLICANTS COMPARED**

**FIGURE B - APPLICANTS COMPARED RE BREADTH OF TEACHING**

**FIGURE C - CTE CREDENTIALING**

**FIGURE D - HIRED INDIVIDUAL'S APPLICATION**

**FIGURE F - SECOND JOB LISTING**

**FIGURE G - SCREENING AND SELECTION**

COMPLAINT

## VIII. REQUEST FOR RELIEF

WHEREFORE, Plaintiff, on behalf of herself, requests the following relief:

Equitable relief $300,000.00 (backward pay)

Injunctive relief

Legal costs

Recommendation letter

Date: 04/28/2024

Your signature

Lisa Rose    *LJROSE*

IN PRO PER

Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

A. For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case-related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing: 4/28/2024

Signature of Plaintiff Printed Name of Plaintiff

*LJRose*

LISA ROSE

COMPLAINT

Page 19 of 19

Enclosure with EEOC
Form 161-B (01/2022)

# INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court under Federal law.*
*If you also plan to sue claiming violations of State law, please be aware that time limits and other*
*provisions of State law may be shorter or more limited than those described below.)*

**PRIVATE SUIT RIGHTS    —    Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA), the Genetic Information Nondiscrimination Act (GINA), or the Age Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within 90 days** of the date you *receive* this Notice. Therefore, you should **keep a record of this date**. Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and its envelope, and tell him or her the date you received it. Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed **within 90 days of the date this Notice was *mailed* to you** (as indicated where the Notice is signed) or the date of the postmark, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. (Usually, the appropriate State court is the general civil trial court.) Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. Filing this Notice is not enough. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Your suit may include any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge. Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the respondent has its main office. If you have simple questions, you usually can get answers from the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy decisions for you.

**PRIVATE SUIT RIGHTS    —    Equal Pay Act (EPA):**

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back pay due for violations that occurred **more than 2 years (3 years)** before you file suit may not be collectible. For example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit **before 7/1/10** – *not* 12/1/10 -- in order to recover unpaid wages due for July 2008. This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days of this Notice **and** within the 2- or 3-year EPA back pay recovery period.

**ATTORNEY REPRESENTATION    —    Title VII, the ADA or GINA:**

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction in your case may, in limited circumstances, assist you in obtaining a lawyer. Requests for such assistance must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney). Requests should be made well before the end of the 90-day period mentioned above, because such requests do **not** relieve you of the requirement to bring suit within 90 days.

**ATTORNEY REFERRAL AND EEOC ASSISTANCE    —    All Statutes:**

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any questions about your legal rights, including advice on which U.S. District Court can hear your case. If you need to inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide your charge number (as shown on your Notice). While EEOC destroys charge files after a certain time, all charge files are kept for at least 6 months after our last action on the case. Therefore, if you file suit and want to review the charge file, **please make your review request within 6 months** of this **Notice**. (Before filing suit, any request should be made within the next 90 days.)

*IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.*